**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**JEENA LEE-WALKER,**

                    **Plaintiff,**          <u>16-cv-109</u>

          **- against -**          <u>OPINION AND ORDER</u>

**N.Y.C. DEP'T OF EDUC., ET AL,**

                    **Defendants.**

**JOHN G. KOELTL, District Judge:**

The plaintiff Jeena Lee-Walker claims that New York City
school officials retaliated against her because she taught a
lesson to her ninth grade students about the Central Park Five,
and because of a subsequent discussion that she had with school
officials about that class. She claims that the school officials
and the New York City Department of Education (the "DOE")
violated her First and Fourteenth Amendment rights.

The plaintiff brings this suit under 42 U.S.C. § 1983
against the DOE, Superintendent Fred Walsh, Principal Stephan
Noonan, Assistant Principal Christopher Yarmy, and Assistant
Principal Benny Ureana. The defendants move to dismiss the
complaint pursuant to Rule 12(b)(6) of the Federal Rules of
Civil Procedure for failure to state a claim. This Court has
jurisdiction under 28 U.S.C. § 1331. For the reasons explained
below, the motion to dismiss is granted.

## I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.; see also Springer v. U.S. Bank Nat'l Ass'n, No. 15-cv-1107 (JGK), 2015 WL 9462083, at *1 (S.D.N.Y. Dec. 23, 2015).

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced

in the complaint, documents that the plaintiff relied on in
bringing suit and that are either in the plaintiff's possession
or that the plaintiff knew of when bringing suit, or matters of
which judicial notice may be taken. See Chambers v. Time Warner,
Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Faulkner v.
Beer, 463 F.3d 130, 134 (2d Cir. 2006) (holding documents
outside the record may become the basis for a dismissal if the
document is "integral" to the complaint and there are no
disputes regarding its authenticity or relevance); Springer,
2015 WL 9462083, at *1.

## II.

The complaint alleges that the defendants retaliated
against the plaintiff in violation of her First Amendment and
due process rights. The following facts alleged in the complaint
are accepted as true for the purposes of the motion to dismiss.

Lee-Walker is a graduate of Barnard College and has post-
graduate degrees from Harvard and Fordham Universities. Compl.
¶ 6(b). The plaintiff obtained New York State teaching licenses
in English Language Arts and was employed as a teacher by the
DOE beginning in at least 2011. Id. ¶¶ 3, 6(b). The plaintiff
took a leave of absence in the 2011-2012 school year and did not
receive any formal performance review during that school year.
Id. ¶ 6(c). The plaintiff's performance during the 2012-2013
schoolyear was allegedly fully satisfactory. Id. ¶ 6(d).

3

In November 2013, Assistant Principal Yarmy conducted an informal classroom observation of the plaintiff's teaching. Id. ¶ 6(f). Lee-Walker planned to include as part of her ninth grade English curriculum a critical look at the Central Park Five case, which she hoped would highlight "an American societal tendency to rush to adverse legal conclusions against black males." Id. ¶ 6(e). After observing the class, Yarmy allegedly instructed the plaintiff to be "way more balanced" in discussing the case because he "feared that it would unnecessarily 'rile up' black students." Id. ¶ 6(g). The plaintiff argued in response that students – black students in particular – should be "riled up," and that a "good, engaged education" would necessarily encourage students to "re-examine old assumptions and to challenge orthodoxy, even whilst presenting a balanced view of the facts." Id. ¶ 6(h). She also argued that including the case in her lesson plan would allow students to "contextualize" Miranda warnings and understand their role in civil society. Id. ¶ 6(i).

Assistant Principal Yarmy then allegedly "angrily disagreed" with the plaintiff, asserting that there had not been any rush to judgment in the Central Park Five case and that Miranda warnings did not apply to the defendants in that case. Id. ¶ 6(j). He then purportedly repeated his concern that the lesson would "rile up" black students and "possibly create

little 'riots' over concepts that the[] [students] were unlikely to understand anyway," and repeated his instruction to be more "balanced" in presenting the case as part of her lesson plan. Id. ¶ 6(j), (k). The plaintiff continued to disagree, arguing that "the lesson was appropriate and 'balanced' already." Id. ¶ 6(l). After an "increasingly shrill" back and forth, the plaintiff allegedly agreed to "try to follow Yarmy's specific instruction to be 'more balanced,'" and later allegedly sought clarification regarding that instruction. Id.

Following their argument, Yarmy allegedly informed Principal Noonan and one or more other Assistant Principals about the inclusion of the Central Park Five case in the plaintiff's lesson plan and about Yarmy's argument with her. Id. ¶ 6(m). As a result, the plaintiff allegedly gained a reputation for being obstinate and insubordinate. Id. ¶ 6(n).

Several days later, on November 13, the plaintiff met with Principal Noonan and Assistant Principal Yarmy. See id. ¶¶ 6(e), (o). Yarmy reiterated his view that the plaintiff's presentation of the Central Park Five case was one-sided; that there had in fact been no "rush to judgment" in the case; that Miranda warnings were a "recent 'creation'"; and that such a lesson might create "riot-like" situations. Id. ¶ 6(o). The plaintiff again reiterated her views about the case, explained why she believed the lesson would be beneficial for her students, and

argued that her presentation of the case was fair. Id. ¶ 6(q).
Noonan allegedly failed to intervene, and nodded in agreement
with Yarmy. Id. ¶¶ 6(p), (r).

At the same meeting, Noonan allegedly expressed disapproval
of the plaintiff's use of the short story "Nilda," by Junot
Diaz, questioning its appropriateness given its use of a racial
epithet. Id. ¶ 6(s). When the plaintiff argued that the story
would "necessarily incite students to re-examine old assumptions
and to challenge existing orthodoxy," Noonan suggested that she
was naïve and ordered her to remove the story from her lessons.
Id. ¶¶ 6(s), (t).

Following the meeting, Yarmy and Noonan allegedly described
to the plaintiff's other supervisors what they viewed as her
"attitude" and "antagonistic pedagogical approach" regarding the
Central Park Five case. Id. ¶ 6(u). Thereafter, the plaintiff's
relationship with the supervisory staff allegedly deteriorated.
Id. ¶ 6(v). In December 2013, the plaintiff for the first time
received below average "developing" ratings in several
performance evaluation categories. Id. ¶ 6(v); see Dandrige
Decl. in Supp. of Defs'. Mot., Ex. A. In January 2014, the
plaintiff received two evaluations from Assistant Principal
Ureana, both of which included "developing" ratings. Compl.
¶¶ 6(x), (z). Also in January, Principal Noonan sent the
plaintiff a written reprimand for allegedly failing to complete

certain required paperwork. See id. ¶ 6(y); Dandrige Decl. Ex. B.

The plaintiff's performance evaluations continued to suffer in the following months. Compl. ¶¶ 6(aa),(bb); see Dandrige Decl. Exs. D, E. During the following schoolyear, the plaintiff continued to receive negative evaluations and reprimands. See Compl. ¶¶ 6(dd)-(mm); Dandrige Decl. Exs. F-K. On May 12, 2015, Superintendent Walsh notified the plaintiff that her appointment as a probationary teacher would end – that is, she would be terminated – 9 days later, on May 21, 2015. Compl. ¶ 6(oo); see Dandrige Decl. Ex. L.[1]

The complaint alleges that the defendants' negative evaluations and eventual termination of the plaintiff constituted retaliation in violation of her First Amendment rights. See Compl. ¶¶ 6(jj), 13-14. In particular, the plaintiff argues that given the "inconsistent nature of all the [performance] evaluations," the evaluations had "been pretextual

---

[1] The complaint alleges that Section 2573 of the New York Education Law required that the plaintiff be given sixty days' notice prior to non-renewal or termination of her employment, and that failure to comply with that procedure violated the plaintiff's rights under the Due Process Clause of the Fourteenth Amendment. Compl. ¶¶ 6(pp)-(tt), 16-17. However, in response to the motion to dismiss, the plaintiff withdrew her second cause of action for violation of due process, leaving only her first cause of action for violation of her right to free speech.

all along," and were attempts to "mask retaliatory animus against plaintiff because of her prior protected activity," namely, her speech regarding the Central Park Five case and Miranda warnings. Id. ¶¶ 6(jj), 14. The complaint seeks damages, costs, and fees. Id. ¶ 18.

The defendants now move to dismiss the complaint, arguing that the plaintiff's speech was not protected speech under the First Amendment and that, in any event, the individual defendants are entitled to qualified immunity for their actions.

## III.

### A.

The defendants argue that the complaint fails to allege sufficiently any constitutional violation because the plaintiff's speech was not protected by the First Amendment.

To state a claim under § 1983, a plaintiff must allege that the defendants, while acting under color of state law, denied the plaintiff a constitutional or federal statutory right. See West v. Atkins, 487 U.S. 42, 48 (1988); Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). The Fourteenth Amendment applies the First Amendment to actions by state officials. See Bd. of Educ., Island Trees Sch. Dist. No. 26 v. Pico, 457 U.S. 853, 855 n.1 (1982). A plaintiff alleging retaliation in violation of the First Amendment must show that "[1] [the plaintiff] has engaged in protected First Amendment activity, [2] [the plaintiff]

8

suffered an adverse employment action, and [3] there was a causal connection between the protected activity and the adverse employment action." Smith v. County of Suffolk, 776 F.3d 114, 118 (2d Cir. 2015) (alterations in original) (per curiam) (quoting Dillon v. Morano, 497 F.3d 247, 251 (2d Cir. 2007)). The defendants argue that the complaint fails to state a claim because the plaintiff's speech was not protected by the First Amendment.

"[A] state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." Connick v. Myers, 461 U.S. 138, 142 (1983). "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). "A public employee, however, must 'by necessity accept certain limitations on his or her freedom,' because, his or her speech can contravene governmental policies or impair the proper performance of governmental functions." Weintraub v. Bd. Of Educ. of City Sch. Dist. of City of N.Y., 593 F.3d 196, 201 (2d Cir. 2010) (quoting Garcetti, 547 U.S. at 418-19) (alterations omitted). "The Supreme Court's employee-speech jurisprudence reflects 'the common sense realization[s] that government offices could not function if every employment decision became a constitutional matter,' and

9

that 'government officials should enjoy wide latitude in
managing their offices without intrusive oversight by the
judiciary in the name of the First Amendment.'" Weintraub, 593
F.3d at 201 (quoting Connick, 461 U.S. at 143, 146).
"Accordingly, the Supreme Court has strived 'to arrive at a
balance between the interests of the teacher, as a citizen, in
commenting upon matters of public concern and the interest of
the State, as an employer, in promoting the efficiency of the
public services it performs through its employees.'" Weintraub,
593 F.3d at 201 (quoting Pickering v. Bd. of Educ. of Twp. High
Sch. Dist. 205, 391 U.S. 563, 568 (1968)).

      With those principles in mind, the Supreme Court in
Garcetti clarified that in order to bring a claim for violation
of the First Amendment a public employee must first establish
that the employee spoke "as a citizen on a matter of public
concern." 547 U.S. at 418. If not, "the employee has no First
Amendment cause of action based on his or her employer's
reaction to the speech." Id. Only when the public employee
speaks (1) as a citizen, and (2) on a matter of public concern,
is the speech protected by the First Amendment; if that
requirement is met, "[t]he question becomes whether the relevant
government entity had an adequate justification for treating the
employee differently from any other member of the general
public." Id. But if "the court determines that the plaintiff

either did not speak as a citizen or did not speak on a matter of public concern, 'the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.'" Sousa v. Roque, 578 F.3d 164, 170 (2d Cir. 2009) (quoting Garcetti, 547 U.S. at 418)).

Garcetti further clarified that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communication from employer discipline." 547 U.S. at 421. In other words, such speech is not made by the public employee "as a citizen on a matter of public concern" and thus does not trigger First Amendment protection. Id. at 418. Garcetti concerned alleged retaliation against a deputy district attorney for writing a memorandum concerning purported government misconduct recommending dismissal of a criminal prosecution. The Supreme Court determined that because the deputy district attorney had written the memo pursuant to his official duties, his speech was not protected by the First Amendment. Id. at 424. In reaching its conclusion, the Supreme Court explained that employers should have sufficient discretion to manage their operations. Id. at 422. The Court concluded: "To hold otherwise would be to demand permanent judicial intervention in the conduct of governmental operations to a

degree inconsistent with sound principles of federalism and the separation of powers." Id. at 423.

Justice Souter dissented in Garcetti. Among his concerns was the possible deleterious effect the Court's holding would have on the "teaching of a public university professor." Id. at 438 (Souter, J., dissenting). Justice Souter explained: "I have to hope that today's majority does not mean to imperil First Amendment protection of academic freedom in public colleges and universities, whose teachers necessarily speak and write 'pursuant to . . . official duties.'" Id. at 438 (Souter, J., dissenting) (quoting Grutter v. Bollinger, 539 U.S. 306, 329 (2003)). The Court responded by acknowledging that the Court did not deal with Justice Souter's concern: "[t]here is some argument that expression related to academic scholarship or classroom instruction implicates additional constitutional interests that are not fully accounted for by this Court's customary employee-speech jurisprudence. We need not, and for that reason do not, decide whether the analysis we conduct today would apply in the same manner to a case involving speech related to scholarship or teaching." Id. at 425.

It thus remains "an open question in this Circuit whether Garcetti applies to classroom instruction." Panse v. Eastwood,

303 Fed. App'x 933, 934 (2d Cir. 2008) (summary order).[2] As an alternative standard, the Second Circuit has "held that school administrators may limit the content of school-sponsored speech so long as the limitations are reasonably related to legitimate pedagogical concerns." Id. at 934-35 (quotation marks omitted). "Whether a school official's action is reasonably related to a legitimate pedagogical concern will depend upon, among other things, the age and sophistication of the students, the relationship between teaching method and valid educational objective, and the context and manner of the presentation." Id. at 935 (quoting Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ., 42 F.3d 719, 722-23 (2d. Cir. 1994) (internal quotation marks omitted)).

The complaint in this case must be dismissed because the plaintiff's "claim would fail regardless of the standard."

---

[2] At least two courts of appeals have held that Garcetti applies to a primary or secondary schoolteacher's in-classroom speech, and that such speech is therefore not protected by the First Amendment. See Brown v. Chicago Bd. Of Educ., 824 F.3d 713, 715 (7th Cir. 2015); Evans-Marshall v. Bd. Of Educ. of Tipp City Exempted Vill. Sch. Dist., 624 F.3d 332, 342-43 (6th Cir. 2010); see also Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 962-64 (9th Cir. 2011) (holding that high school teacher's in-classroom speech was made "as an employee, not as a citizen," and therefore could not form the basis of a First Amendment claim). Two courts of appeals have acknowledged a carve-out to the standard set out in Garcetti in the context of speech made by a professor at a public university. See Demers v. Austin, 746 F.3d 402, 412-13 (9th Cir. 2014); Adams v. Trs. Of the University of N.C.-Wilmington, 640 F.3d 550, 562 (4th Cir. 2011). One court of appeals declined to apply Garcetti to a public school teacher's posting of items on a high school bulletin board, but found that the speech was not protected by the First Amendment in any event because it was not speech on a matter of public concern. Lee v. York Cty. Sch. Div., 484 F.3d 687 (4th Cir. 2007).

Panse, 303 Fed. App'x. at 935. The plaintiff's claim fails if
the Garcetti standard is applied. The complaint's factual
allegations make plain that the plaintiff's speech was made
"pursuant to [her] duties" as a public school teacher under
Garcetti. 547 U.S. at 421. "The objective inquiry into whether a
public employee spoke 'pursuant to' his or her official duties
'is a practical one.'" Weintraub, 593 F.3d at 202 (quoting
Garcetti, 547 U.S. at 424). The plaintiff does not dispute that
her speech in the classroom as part of a lesson plan was made
pursuant to her duties as a public school teacher. See
Plaintiff's Opp. to Mot. at 6. Indeed, those statements "were
made to [her] own students, at school, during class, concerning
a topic that [s]he alleges [s]he believed to be of importance to
their continuing" education. Panse, 303 Fed. App'x at 935.

The plaintiff does argue that her conversations with
Principal Noonan and Assistant Principal Yarmy were "private
discussions" that "did not relate solely to her objections to
the limits placed on her classroom speech" and constituted
"speech on a matter of public concern." Plaintiff's Opp. to Mot.
at 8. But, the fact that the speech was related to matters of
public concern is insufficient if the speech was made "pursuant
to [her] official duties." Garcetti, 547 U.S. at 421. "[U]nder
the First Amendment, speech can be 'pursuant to' a public
employee's official job duties even though it is not required

14

by, or included in, the employer's job description, or in
response to a request by the employer." Weintraub, 593 F.3d at
203. Indeed, speech is not protected if it is "'part-and-parcel
of [the employee's] concerns' about [the employee's] ability to
'properly execute [the employee's] duties.'" Weintraub, 593 F.3d
at 203 (quoting Williams v. Dallas Indep. Sch. Dist., 480 F.3d
689, 694 (5th Cir. 2007)). Thus, the plaintiff's speech
challenging the views of Noonan and Yarmy need not have related
solely to her classroom responsibilities to have been "pursuant
to" her official duties; what matters is that the speech was
"part-and-parcel" of her concerns regarding the ability to teach
effectively. See Weintraub, 593 F.3d at 203 (speech at issue was
a "means to fulfill, and undertaken in the course of performing,
[plaintiff's] primary employment responsibility of teaching")
(citations and quotation marks omitted). Indeed, limiting speech
made "pursuant to" a public employee's official duties to
preclude any speech which also represents the speaker's personal
views would render the standard meaningless.

The content and context of the plaintiff's conversation
with Noonan and Yarmy as alleged makes plain that it was not a
personal disagreement between co-workers. Rather, the plaintiff
alleges a disagreement between herself and her supervisors
regarding the content and tone of a lesson to be given to her
ninth grade English class. She spoke "only to several school

15

administrators rather than to the public," and her concerns regarded her own lesson plans, "for which there is no relevant citizen analogue." Massaro v. N.Y.C. Dep't of Educ., 481 Fed. App'x 653, 655-56 (2d Cir. 2012)(summary order). Although the lack of a citizen analogue is not dispositive, it reinforces the conclusion that the plaintiff's speech was in furtherance of her duties as a public school teacher. See Weintraub, 593 F.3d at 204. Therefore, pursuant to the standard articulated by the Supreme Court in Garcetti, the plaintiff's speech was the speech of a public employee pursuant to her official duties and is not entitled to First Amendment protection.

The Court of Appeals for the Second Circuit has left open the possibility that a different standard may apply to classroom instruction. See Panse, 303 Fed. App'x at 934. But even using the alternative standard, the complaint must be dismissed. Under the alternative standard, administrators may "limit the content of school-sponsored speech so long as the limitations are 'reasonably related to legitimate pedagogical concerns.'" Silano, 42 F.3d at 722 (quoting Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 273 (1988)). "[T]he ultimate authority to determine what manner of speech in the classroom is inappropriate properly rests with the school board, rather than with the federal courts." Silano, 42 F.3d at 722 (alterations and quotation marks omitted). "School officials are in the best

16

position to ensure that their students learn whatever lessons an activity is designed to teach, and that readers or listeners are not exposed to material that may be inappropriate for their level of maturity." Id. (alterations and quotation marks omitted).

Lee-Walker argues that the complaint does not establish that she had done anything wrong in discussing the Central Park Five case and that she does not concede that Yarmy's concerns were reasonable or realistic. But refusal to concede is insufficient to preclude dismissal under Rule 12(b)(6). Rather, the complaint must allege facts sufficient to support "a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

The complaint alleges that the plaintiff's supervisors instructed her to be "more balanced" in discussing the Central Park Five case as a part of her lesson plan for a ninth grade class; that they were concerned about the students' potential reactions to the lesson; and that they were concerned the lesson may have been age inappropriate. See Compl. ¶ 6(g), (j), (k). The complaint also alleges that Principal Noonan ordered the plaintiff to excise a short story from her lesson plan because of its use of a racial epithet. Id. ¶ 6(r)-(t). Lee-Walker does not allege that the defendants' concerns were fabricated or pretextual, or that they were unrelated to her work as a

17

teacher. Although the plaintiff disagreed with her supervisors' concerns, there is no plausible argument that the limitations imposed on the plaintiff's speech were not "reasonably related to legitimate pedagogical concerns." Hazelwood, 484 U.S. at 273. Rather, the plaintiff argues that her supervisors should have weighed those pedagogical concerns differently. The task of balancing those concerns is precisely within the province of school officials, and is uniquely unsuited to the federal courts. See Silano, 42 F.3d at 722-23; Evans-Marshall, 624 F.3d at 342 ("Permitting federal courts to distinguish classroom vulgarities from lyrics or to pick sides on how to teach Siddhartha not only is a recipe for disenfranchising the 9,000 or so members of the Tipp City community but also tests judicial competence."). Therefore, even under the alternative approach to the clear rule articulated in Garcetti, the complaint fails to plead "factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

**B.**

Moreover, the individual defendants are entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which

18

a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (alterations omitted).[3] "To determine whether a right is clearly established, we look to (1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question, and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful." Scott v. Fischer, 616 F.3d 100, 105 (2d Cir. 2010). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012)). This "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001).

Following Garcetti, it remains "an open question" whether that case's standard "applies to classroom instruction." Panse, 303 Fed. App'x at 934; see also Kramer v. N.Y.C. Bd. of Educ., 715 F. Supp. 2d 335, 352-54 (E.D.N.Y. 2010) (surveying the "lack of national uniformity" regarding whether Garcetti applies to classroom instruction). In light of this uncertainty, officials

---

[3] The plaintiff argues that qualified immunity is inappropriate with respect to her claims for equitable relief, but the current complaint seeks no such relief and, in any event, the individual defendants would not have the power to grand such relief.

in the defendants' positions could reasonably have believed that demanding changes to the plaintiff's lesson plans or disciplining her for failing to comply with those instructions or for the content of her classroom teaching did not violate the plaintiff's First Amendment rights. See Vega v. Miller, 273 F.3d 460, 467-68 (2d Cir. 2001) (prior case law would not have put defendants on notice that disciplining plaintiff for failure to exercise professional judgment in class would violate his free speech rights).

The plaintiff relies on the general proposition that "the First Amendment tolerates neither laws nor other means of coercion, persuasion, or intimidation that cast a pall of orthodoxy over the free exchange of ideas in the classroom." Dube v. State Univ. of N.Y., 900 F.2d 587, 598 (2d Cir. 1990) (quotation marks omitted). But that general principle is insufficient to constitute a clearly established right that the defendants violated, because the Supreme Court has "repeatedly told courts not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of particular conduct is clearly established," Mullenix, 136 S. Ct. at 308 (alterations and quotation marks omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or

constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

None of the cases the plaintiff relies upon meet that standard. All of the cases predate Garcetti, which, as the Court of Appeals for the Second Circuit recognized, "narrowed the Court's jurisprudence in the area of employee speech by further restricting the speech activity that is protected." Weintraub, 593 F.3d at 201 (quotation marks omitted). In any event, those cases would not render clearly established the "violative nature of [the] particular conduct" at issue here. Mullenix, 136 S. Ct. at 308 (quotation marks omitted). For example, James considered a teacher who was terminated because he passively wore a black armband during class. James v. Bd. of Educ. of Cent. Dist. No. 1 of Towns of Addison, 461 F.2d 566 (2d Cir. 1972). That very case affirmed that "curriculum controls belong to the political process and local school authorities"; indeed, it was the absence of any connection to "the teacher's obligations to teach" that led the court to conclude that the armband prohibition was unconstitutional. Id. at 573.[4] Dube, on which the plaintiff also relies, considered a college professor, not a high school teacher. 900 F.2d at 587. "[T]he constitutional

_____

[4] Moreover, the standard set forth in James – that the question "is whether the regulatory policy is drawn as narrowly as possible to achieve the social interests that justify it," 461 F.2d at 574 – is inapplicable to school-sponsored speech, see Panse, 303 Fed. App'x at 934.

rules applicable in higher education do not necessarily apply in primary and secondary schools, where students generally do not choose whether or where they will attend school." <u>Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1</u>, 551 U.S. 701, 724-25 (2007); <u>see also</u> <u>Evans-Marshall</u>, 624 F.3d 332, 343 ("The concept of 'academic freedom,' moreover, does not readily apply to in-class curricular speech at the high school level."). No decision before November 2013 (and none since) would put "every reasonable official" on notice that the conduct alleged violates a teacher's First Amendment rights. <u>See</u> <u>Vega</u>, 273 F.3d at 467.

## C.

The plaintiff moved to amend the complaint to "assert a reinstatement and front pay claim and clarif[y] the <u>Monell</u> claim." Plaintiff's Opp. to Mot. at 1. At argument on the motions, however, the plaintiff explained that she did not seek to file an amended complaint if her First Amendment claim was dismissed. The plaintiff alleged all that she sought to allege to plead her First Amendment claim. Therefore, the plaintiff's motion to amend her complaint is denied without prejudice as moot.

## CONCLUSION

For the reasons explained above, the defendants' motion to dismiss the complaint is **granted**, and the complaint is dismissed with prejudice. The plaintiff's motion to amend the complaint is **denied without prejudice as moot**. The Clerk is directed to enter judgment dismissing the complaint and closing the case. The Clerk is also directed to close all pending motions.

**SO ORDERED.**

**Dated:**   **New York, New York**
          **November 22, 2016**          ___/s/_____
                                                **John G. Koeltl**
                                     **United States District Judge**

23